## Commonwealth v. Baltzley

236

*Daniel E. Teeter*, for Commonwealth.

*Sidney G. Handler* and *Eugene R. Hartman*, for defendant.

SHEELY, P. J., March 9, 1957.—Three questions are presented in this motion to quash the indictment returned by the grand jury against defendant. Does the indictment charge an offense at common law? Does it charge a statutory offense? Is there a fatal variance between the information laid before the justice of the peace and the indictment returned by the grand jury?

The indictment charges that defendant did "unlawfully, willfully and knowingly . . . obstruct justice in that he did hinder, obstruct and interfere with the performance by the sheriff of Adams County of his official duties, by placing himself in front of the automobile of said sheriff, knowing him to be the sheriff of said county; did encourage and participate with others in the creation of a human chain of persons across the road leading to Summit Mining Corporation . . ., said Baltzley being directly in front of said sheriff's car; by refusing to clear said road or by getting away from in front of said automobile in order that the said sheriff might proceed to the buildings of said Summit Mining Corporation, knowing that the said sheriff and his deputies had been called by the officer in charge of Summit Mining Corporation to suppress an affray or impending riot, and knowing that said sheriff desired to proceed and had ordered him and said other persons to clear the way in front

of said sheriff's car in order that said sheriff might proceed to investigate a call by said company official for the suppression of an affray or riot, it having been reported by said company official unto said sheriff that Harold L. Batzley, Sr., and others were carrying lead pipes, threatening damage to the property and working employes of said Summit Mining Corporation".

The Commonwealth does not contend that a statutory offense is charged in the indictment and, admittedly, section 314 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4314, would not apply since the offense therein defined is limited to obstructing, resisting or opposing any officer in serving any legal process or order, or in making a lawful arrest without warrant, etc., none of which factors are alleged in the present indictment. The question then is whether the indictment charges an offense at common law.

Pennsylvania is a common law State and the common law of England, as to crimes, is in force except insofar as it has been abrogated by statute: Commonwealth v. Mochan, 177 Pa. Superior Ct. 454, 457 (1958). In Commonwealth v. Miller, 94 Pa. Superior Ct. 499, 507 (1928), the controlling principles are thus stated: ". . . The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government: 16 Corpus Juris, Sec. 23, page 65, citing Republica v. Teischer, 1 Dallas 335; Com. v. Sharpless, 2 S. & R. 91, and Barker v. Com., 19 Pa. 412."

A strong argument can be made that the definition of crimes is a legislative function and that where the

legislature has not designated certain acts to be crimes, it does not intend them to be crimes and the courts should refrain from so designating them as crimes under common law principles. See dissenting opinion of Judge Woodside in Commonwealth v. Mochan, supra. On the other hand, since it has always been recognized that the common law is in force in Pennsylvania, there has been no reason for the legislature to attempt a complete catalogue of crimes, or to take any action thereon except to cover certain situations or to provide penalties. Section 1101 of The Penal Code of 1939 provides that: "Every offense now punishable either by statute or common law of this Commonwealth and not specifically provided for by this act, shall continue to be an offense punishable as heretofore." Be that it may, the rule is firmly established that all such crimes as especially affect public society are indictable at common law, and the test is "whether they injuriously affect the public police and economy": Commonwealth v. McHale, 97 Pa. 397, 410 (1881).

In this case defendant is charged with interfering with the sheriff in the performance of his duties. Specifically, the charge is that the sheriff had been called by an officer of the Summit Mining Company who informed him that defendant and others were carrying lead pipes and threatening damage to the property and working employes of the company and requested him to suppress an affray or impending riot, that defendant knew of this call and of the purpose of the sheriff in going to the plant of the company, that defendant and others, encouraged by him, formed a human chain across the road leading to the plant and refused to clear the road so that the sheriff might proceed to investigate the complaint.

In recent years the function of the sheriff as a law enforcement officer has not been exercised as it once

was, due, no doubt, to the efficiency of the Pennsylvania State Police and local police. However, his authority and his responsibility as a law enforcement officer have not in any way been lessened. "The very name of sheriff indicates his duties, being derived from two Saxon words, 'seyre', that is, shire or county, and 'reve', keeper or guardian. He is both by the common law and special commission, the keeper of the peace of the Commonwealth within the county, and any neglect or omission on his part in the performance of this great duty to the utmost of his power and ability, subjects him to heavy legal liabilities, both civil and criminal. . . . When engaged in the suppression of dangerous riots, the sheriff and his assistants are authorized to resort to every necessary means to restore the public peace, and prevent the commission of criminal outrages against person or property": In re Riots of 1844, 2 Clark 275, 283 (1844).

His duty as the keeper of the peace in the entire county requires that "he should be wherever therein he apprehends reasonable necessity for his presence for any of the purposes indicated": Charge to Grand Jury of Venango County, 23 Pa. C. C. 667, 668 (1900). "He must be reasonably alert with respect to possible violations of the law and is not entitled to wait until they come to his personal knowledge, but must follow up information received from any source": 47 Am. Jur. 840, §26.

Defendant contends that the element of public justice is absent unless the execution of lawful process or the making of a lawful arrest without a warrant is present. In other words, the sheriff would have no duty and no responsibility until after a criminal act had been committed. Against the background of his duties and obligations as above defined, it is clear that the sheriff has a duty to act to preserve the peace before it is

broken and that he would clearly be performing his duties in investigating a complaint from an officer of a company informing him that persons were carrying lead pipes and were threatening damage to the property and working employes of the company. What action he should have taken in the investigation or after determining the true facts is quite another question, but his right and his duty to make the investigation is clear.

Was it an offense at common law for defendant, and others encouraged by him, knowing the purpose of the sheriff's visit, to form a human chain across the road to prevent his entry to the plant and to refuse to clear the road that he might proceed to investigate the complaint? The sheriff is the symbol of law and order and any act defying his authority or preventing him from performing his duties is open defiance of lawful authority. If a law enforcement officer is to be prevented, or even deterred, from going to a place where he has reason to believe that a breach of the peace is about to be committed, his efficiency as the keeper of the peace would be destroyed, and certainly the law is not impotent to redress such a wrong.

But defendant contends that the only offense relating to the protection of public officers in the performance of their duty known to the common law is that of "obstructing the execution of lawful process" and that two essential elements of that offense are lacking in the instant indictment: (1) The fact of force or active opposition which is a necessary ingredient of the obstruction, and (2) the execution of lawful process by the sheriff. Of course, if these two elements were present, the offense would come within the definition of section 314 of The Penal Code of 1939, 18 PS §4314, and it would not be necessary to look to the common law. We have shown above that

that act does not apply, and we have also shown that the duties of a sheriff go far beyond these functions.

Defendant relies largely upon Commonwealth v. Farling, 12 Dist. R. 732 (1903). In that case the sheriff attempted to levy upon the goods of defendant in his dwelling house and defendant had previously told the sheriff he would not permit him to enter the house to make the levy. When the sheriff arrived defendant hooked the screen door and refused to open it. The charge was laid under section 8 of the Act of March 31, 1860, P. L. 382, which is substantially the same as section 314 of The Penal Code of 1939. While not necessary to a determination of the case, the court considered the common law offense of obstructing justice as well as the statutes of other states and concluded that, page 735: ". . . in order to constitute the offence of obstructing the execution of legal process, either at common law or under the Federal or state statutes, there must be (a) the application of actual, active, physical force, or (b) threats, actual or implied, coupled with present power of carrying them into effect." Aside from other considerations, that case involved defendant's dwelling house.

In Commonwealth v. Frankfeld, 114 Pa. Superior Ct. 262 (1934), defendant attended a sheriff's sale and made a speech to the crowd of people who, by their actions, menaced the sheriff and compelled him to continue the sale. Defendant was indicted under section 8 of the Act of 1860 and contended that the word "forcibly" meant active, physical force, and that as there was no proof of actual force he could not be convicted of obstructing legal process. The Superior Court disagreed and said that:

"In our view the intent of the legislature was that verbal remonstrances, unaccompanied by threats or incitement to resistance, are insufficient. But where

there is a presence of deterring power and threats of physical force, either express or implied, if the service of the writ or process is executed, it comes within the contemplation of the statute. Officers charged with the service of process should be and are under the protection of the law. To intimidate them by the use of threats, accompanied by an exhibition of physical power and an apparent intent to use it, thus preventing the execution of process, is a crime. For instance, if one exhibits and threatens to use a deadly weapon on an officer if he executes a process, and the officer is thus deterred from carrying out his official duty, it is just as effective an interference with service as if actual force had been used. It would be fatuous to say that such action is not obstruction of legal process. In Wharton Criminal Law, 12th ed., vol. 1, §857, page 55, it is said: 'It is not necessary that there should be a blow struck or force actually applied, . . . though it is essential that the resistance should imply the application of force, actual or threatened; mere vituperation not constituting the offense, unless there be an apparent intention to resist by force, . . . but whether the process be criminal or civil, resistance to its execution, whereby such execution is hindered, is an indictable offense'."

The forming of a human chain across a roadway, and standing in front of an automobile and refusing to move, certainly implies the application of force if the officer proceeds. There is here much more than a verbal remonstrance.

In Appling v. State, 95 Arkansas 185, 128 S. W. 866 (1910), defendant stood on the threshold of a house and refused to permit an officer to enter to execute a search warrant. It was held: "It would not do to hold that one who stands in the way and refuses to permit an officer to execute process is guiltless of obstructing the officer. Such refusal is of itself an

obstruction, for the officer may desist in order to avoid violence or bloodshed, and the service of process would be thus hindered."

In Commonwealth ex rel. Walker v. The Sheriff, 3 Brewster 343 (1869), defendant was charged with obstructing an officer. On habeas corpus it appeared that after an arrest had been made, defendant stepped in front of the officer, demanded his number and remonstrated with him for ill treating the prisoner. It was held that: "There was really no hinderance or obstruction. The demand for the number of an officer is no crime, *nor is the momentary standing in front of him*. Still less is it an offence to remonstrate, provided *there is no incitement to resistance*." In the present case, of course, there was more than a momentary standing in front of the officer and there was an incitement to resistance by the formation of the human chain.

Keeping in mind that the common law is sufficiently broad to punish any act which directly injures or tends to injure the public to such an extent as to require the State to interfere and punish the wrongdoer, as in the case of acts which obstruct or pervert justice or the administration of government, we hold that the placing of oneself, together with others, in a human chain across a roadway to prevent the sheriff from answering a call to keep the peace, and refusing to permit the sheriff to proceed, constitutes the common law offense of obstructing justice. It would be an anomolous situation if the law would protect an officer in making an arrest without a warrant but would not protect him in determining whether an arrest should be made.

The final contention of defendant is that there is a fatal variance between the information and the indictment. The information charged that defendant did "unlawfully, willfully and knowingly hinder, obstruct,

and interfere with the performance by the sheriff . . . of his official duties in that he did refuse to comply with a lawful directive of said sheriff, namely to clear the right of way and permit the sheriff and his deputy to enter the property of said mining company, and in that he did place himself in front of the automobile of said sheriff refusing to let sheriff proceed into premises on his official duties and further did refuse to permit several other employes of said mining corporation to go upon the premises and follow a gainful occupation in violation of generally recognized practices."

The fact that the allegation of the information concerning the refusal to permit other employes of the company to go upon the premises was not included in the indictment does not constitute a variance. Defendant cannot object that a portion of the initial charge against him was dropped. The rest of the information clearly charges that defendant placed himself in front of the automobile of the sheriff and refused to permit him to enter the premises on his official duties and refused to clear the way to permit him to enter. Except that the indictment states the nature of the official duties of the sheriff and states that defendant acted in concert with the others in the creation of a human chain across the road, it conforms to the information. We fail to follow the reasoning of defendant that there is a variance between the two.

And now, March 9, 1957, the motion to quash the indictment is overruled and an exception is noted on behalf of defendant.